FILED ORIGINAL
2010 DEC 14 P 1:44
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

LAW OFFICES OF S. CHANDLER VISHER
S. Chandler Visher (State Bar No. 52957)
44 Montgomery Street, Suite 3830
San Francisco, California 94104
Telephone: (415) 901-0500, Facsimile: (415) 901-0504
chandler@visherlaw.com

THE LAW OFFICES OF DANIEL HARRIS
Daniel Harris *(Pro Hac Vice to be applied for)*
Anthony Valach *(Pro Hac Vice to be applied for)*
150 N. Wacker Drive, Suite 3000
Chicago, IL 60606
Telephone: (312) 960-1802

E-filing

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

EMC

| | |
|---|---|
| JOHN SCHLEGEL and CAROL ROBIN SCHLEGEL, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendants. | No. CV 10 5679<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMANDED** |

**COMPLAINT**

1. Plaintiffs John and Carol Robin Schlegel, by their counsel, bring this action on behalf of themselves and all others similarly situated against Wells Fargo Bank, N.A. ("Wells Fargo") to challenge Defendant's failure to comply with the notice provisions of the Equal Credit Opportunity Act when it

cancels or revokes final loan modification agreements that it has entered into with its mortgage customers. Plaintiffs also seek relief for breach of contract and unfair and deceptive practices.

**THE PARTIES**

2. Plaintiffs John and Carol Robin Schlegel own a home in Las Cruces, New Mexico. Defendant Wells Fargo Bank, N.A. owned the mortgage on the Schlegels' home that was in place in 2009 ("Old Mortgage") and the modified mortgage that became effective on or about June 29, 2010 ("New Mortgage"). Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A., services the Schlegels' mortgage. Wells Fargo Bank, N.A. owns and controls Wells Fargo Home Mortgage. References to Wells Fargo include Wells Fargo Home Mortgage.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over Count One of this Complaint, which seeks relief under the Equal Credit Opportunity Act (ECOA), pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1691e. The Court has jurisdiction over Count Two, which seeks declaratory relief under state law, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1453, because there is diversity of citizenship and the amount in controversy, on information and belief, exceeds $5,000,000, 28 U.S.C. § 1332(d)(2), and pursuant to supplemental jurisdiction, 28 U.S.C. § 1367. This Court has jurisdiction over Count Three, which seeks injunctive relief under state law, pursuant to supplemental jurisdiction, 28 U.S.C. § 1367.

4. Venue is proper in this Court because Defendant is headquartered in this District and does business here. 28 U.S.C. § 1391(c)

**INTRADISTRICT ASSIGNMENT**

5. This action could not be said to "arise" in any county in this District as described in Civil L.R. 3-2 but this action is appropriately assigned to the San Francisco Division of the Northern District of California as the defendant has its principal place of business in the City and County of San Francisco and its parent company, Wells Fargo & Co., with whom it has unified operations, is located here.

**BACKGROUND**

6. The mortgage industry is currently overwhelmed with applications for loan modifications. As a result, the system is malfunctioning in a variety of ways. One of those ways is that mortgage customers are approved for loan modifications and then told they are in default even though they have been complying with the terms of the loan modification agreement. As Iowa Attorney General Tom Miller testified to the Senate Banking Committee on November 16, 2010:

> Perhaps the biggest problem is that loss mitigation and foreclosure exist simultaneously on parallel tracks. This leads to problems when the left hand does not know what the right hand is doing. Thus, we all hear stories of borrowers who thought they were approved for a loan modification receiving a notice of foreclosure sale.

7. On December 1, 2010, John Walsh, Acting Comptroller of the Currency, told the Senate Banking Committee that the dual track system in which banks proceed with foreclosures while evaluating borrowers for loan assistance was "unnecessarily confusing for distressed homeowners" and that he has directed banks, where legally possible, to halt foreclosure proceedings if borrowers are starting loan assistance programs.

8. It appears, however, that banks either do not feel themselves bound by this directive or do not have record keeping systems that recognize that a loan is in the modification process or has been modified.

9. Plaintiffs' situation illustrates the problem. The Schlegels are Wells Fargo mortgage customers. Last year, they applied for a loan modification.

10. On or about June 29, 2010, Wells Fargo sent a letter to the Schlegels which said: "This letter will confirm our formal approval of a loan modification of your mortgage loan." A copy of the letter is attached hereto as Exhibit A. The letter, and accompanying contract (which the Schlegels signed and returned (and which thus became the New Mortgage), said that the modified maturity date of the loan would be July 1, 2050, the new principal and interest payment would be $795.58 and the estimated escrow payment would be $256.99, making the estimated new payment $1,052.57. The New Mortgage was an enforceable contract and replaced the Old Mortgage payment terms.

11. The Schlegels made the monthly payments required under the New Mortgage: $1,052.57 on August 1, 2010 (the Schlegels had $458.24 in a suspense account, so they were told to send in an additional $594.33 (1,052.57 – 458.24), which they did); $1052.57 on September 1, 2010; $1052.57 on October 1, 2010; and $1052.57 on November 1, 2010.

12. Between the time they received the New Mortgage and November of this year, the Schlegels did not receive any notice from Wells Fargo that there was any problem with it or that Wells Fargo considered the Old Mortgage to be still in effect.

13. The Schlegels received a letter from a Wells Fargo office in California, dated November 7, 2010, which stated: "Our records show that your mortgage is in default." The delinquency figures in the letter, as well as the fact that the New Mortgage was not in default, make it clear that the letter refers to an alleged delinquency on the Old Mortgage. The November 7 letter, a copy of which is attached hereto as Exhibit B, went on to explain that the Schlegels had past due payments of $11,256.36, plus a fee of $15.00, and unapplied funds of $5,217.59, leaving a balance of $6,053.77. The letter went on to warn the Schlegels:

> To avoid the possibility of acceleration, you must pay this amount plus any additional monthly payments, late charges and other charges that may be due under applicable law after the date of this notice and on or before December 7, 2010 in CERTIFIED funds, to **Wells Fargo Home Mortgage, 1200 W 7th Street, Suite L2-200, Los Angeles, CA 90017**
>
> If funds are not received by the above referenced date, we will proceed with acceleration. Once acceleration has occurred, we may take steps to terminate your ownership in the property by a foreclosure proceeding or other action to seize the home or pursue any other remedy permitted under the term of your Mortgage.
>
> Exhibit B.

14. The Schlegels telephoned Wells Fargo on November 13, the day they received the November 7 letter, to explain that there must be an error as the New Mortgage, not the Old Mortgage, was in effect and was not delinquent. Wells Fargo took the position that there was no New Mortgage in effect. After the telephone conversation, the Schlegels received another letter from Wells Fargo (again from a Wells Fargo office in California) -- dated November 14, 2010 -- telling them again that they

were in default, again clearly on the Old Mortgage, but reducing the amount allegedly due and owing to $5,630.26. See Exhibit C.

15. The November 14 letter said, in pertinent part:

> Our records show that your mortgage is in default. * * * The past due payments on this loan are to be made by December 14, 2010, or it will become necessary for us to accelerate the Mortgage Note and pursue the remedies against the property as provided for in the Mortgage or Deed of Trust.

16. The November 7 and 14 letters from Wells Fargo related to the plaintiffs' Old Mortgage. Although the letters refer to the terms of the Old Mortgage, they are evidence that at some time on or before November 7 Wells Fargo had revoked, abrogated or otherwise taken some "adverse action" with respect to the New Mortgage contained in Exhibit A. Under the notice provisions of the Equal Credit Opportunity Act, Wells Fargo had a duty to send the Schlegels a written adverse action notice advising them of the adverse action with respect to the New Mortgage. Wells Fargo did not comply with this duty.

17. The November 7 and November 14 letters from Wells Fargo were not adverse action notifications with respect to the New Mortgage, despite the fact that it is possible to deduce from them that an adverse action with respect to the New Mortgage had been taken, because they do not meet the legal requirements of an adverse action notice and clearly were not intended to be adverse action notices as defined in the ECOA. The November 7 and 14 letters were clearly intended to be delinquency notices, which do not have to meet the requirements of an adverse action notice.

18. Wells Fargo was required to provide notice of the adverse action on the New Mortgage within 30 days of taking the action, which was clearly taken at some time on or before November 7. Wells Fargo had until December 7, 2010, at the latest, to give plaintiffs notice of the adverse action taken on their New Mortgage. To date, more than 30 days after December 7, the Schlegels have received no adverse action notice.

19. The Schlegels' situation reflects a much larger problem, of which the bank's failure to comply with the notice provisions of the Equal Credit Opportunity Act is just one small part: Either Wells Fargo is willfully disregarding its loan modification agreements or the bank has some systemic

problem which causes Wells Fargo to ignore its loan modification agreements and court orders modifying mortgages.

20. Thus, for example, in July 2008 in *Wells Fargo Bank, N.A. v. Jones*, 391 B.R. 577 (E.D. La. 2008), a federal court in Louisiana affirmed a bankruptcy court order finding Wells Fargo in violation of the debtor's confirmed plan, and imposing punitive damages, noting:

> The Bankruptcy Court clearly had authority to impose punitive damages against Wells Fargo pursuant to Section 362 because the Bankruptcy Court determined that Wells Fargo's conduct was "egregious."

Id. at 609.

21. In February 2009, a federal bankruptcy court in Florida sanctioned Wells Fargo for violation of a discharge injunction, stating:

> The Court finds that Wells Fargo's actions were both intentional and egregious. Wells Fargo charged improper fees during the life of the Chapter 13 case. Wells Fargo attempted to collect those improper fees after Plaintiffs received their discharge by making numerous telephone calls and sending numerous ominous letters to Plaintiffs demanding that Plaintiffs become current or face foreclosure. Wells Fargo ignored two letters sent by Plaintiffs' counsel attempting to resolve the matter. Wells Fargo made false entries on Plaintiffs' credit reports. Wells Fargo overcharged Plaintiffs when Plaintiffs' house was sold. Finally, Wells Fargo completely ignored the complaint in this adversary proceeding, opting not to file an answer or to become otherwise involved until after the entry of a default. The Court finds that Wells Fargo's conduct warrants an award of punitive damages in the amount of $15,000.

*In re Nibbelink,* 403 B.R. 113,122 (Bkrtcy. M.D. Fla 2009).

22. In May 2010, in a case filed by Wells Fargo mortgage customers Ron and Marianna Ward, Judge Jeff Almquist in Santa Cruz County, California issued a temporary injunction against Wells Fargo based on allegations that Wells Fargo sold the Wards' home in foreclosure even though the borrowers were complying with a loan modification agreement. www.mercurynews.com\fdcp?1291310674977 (11/30/2010).

23. Also in May 2010, a federal bankruptcy judge in Houston, Texas sanctioned Wells Fargo for repeatedly ignoring an Agreed Judgment modifying a mortgage. In commenting on the testimony of a Wells Fargo witness, a Senior Counsel for the company, the court said:

> The Court finds Grissom's credibility to be lacking in certain respects. First, he gave a Shermanesque statement that Wells Fargo was now in compliance with the Agreed Judgment . . . , but then subsequently had to admit that Wells Fargo's records still contained errors in violation of the Agreed Judgment. . . . Second, he could not explain why there are late charges appearing on Wells Fargo's records. . . . Grissom's failure on these key points, combined with his nonchalance on the stand, reflects a troubling lack of perspective regarding how much is at stake for honest and diligent Chapter 13 debtors, such as the De La Fuentes, who are trying to hold on to their home, and how important it is for Wells Fargo to abide by this Court's orders when dealing with debtors. Grissom appears to be representative of the absence of any sense of urgency within Wells Fargo to maintain accurate records and comply with the law.

*In Re De La Fuente*, 430 B.R. 764, 783-84 (Bkrtcy. S.D. Texas 2010).

24. In going on to reject Wells Fargo's "mistakes happen" defense, the bankruptcy court noted:

> The Court certainly agrees that "mistakes happen." However, when mistakes happen not once, not twice, but repeatedly, and when actions are not taken to correct these mistakes within a reasonable period of time, the failure to right the wrong - particularly when the basis for the problem is a months-long violation of an agreed judgment - the excuse of "mistakes happen" has no credence. Here, Wells Fargo's failure to take corrective action to comply with the Agreed Judgment does not come within hailing distance of the realm where "mistakes happen" is a legitimate excuse. Rather, such failure, if not willful refusal to comply with the Agreed Judgment, is at least reckless disregard of the Agreed Judgment.

*In Re De La Fuente*, 430 B.R. 764, 790-91 (Bkrtcy. S.D. Texas 2010).

25. In November 2010, a judge in Suffolk County, New York, in *Wells Fargo Bank NA v. Meyers*, 34632-09, dismissed a foreclosure action filed by Wells Fargo because Wells Fargo had

acted in bad faith by commencing the action one day after the homeowners accepted a loan modification proposal by Wells Fargo.

**CLASS ACTION ALLEGATIONS**

26. Because plaintiffs believe that they are typical of a much larger pattern of wrongdoing, this action is being brought as a class action pursuant to Fed.R.Civ.P. 23.

27. The acts, practices and conduct of which plaintiffs complain affected a Class consisting of all persons who: (a) have a home mortgage loan owned or serviced by Wells Fargo; (b) were sent a formal approval of a loan modification accompanied by a final loan modification agreement by Wells Fargo with respect to that home mortgage loan; (c) made timely payments as required by the final loan modification agreement; (d) were sent a notice of default from Wells Fargo dated on or after November 13, 2008, after entering into the loan modification agreement; and (e) did not receive, within 30 days of the notice of default, an adverse action notice from Wells Fargo. Plaintiffs reserve the right to amend this proposed class definition based on discovery to ensure that the class members are readily ascertainable based on objective criteria.

28. Upon information and belief, the members of the Class are so numerous that joinder is impractical. Upon information and belief, the Class is comprised of at least hundreds of individuals. Fed.R.Civ.P. 23(a)(1).

29. There are questions of law and fact common to the members of the Class, which questions predominate over any individual issues. Fed.R.Civ.P. 23(a)(2). These common questions include: (a) whether Defendant Wells Fargo had an obligation under the Equal Credit Opportunity Act to provide adverse action notices to customers who were in compliance with their final loan modification agreements when Wells Fargo took adverse action on that new mortgage loan; (b) whether Wells Fargo violated the Equal Credit Opportunity Act when it sent notices of default to customers who were in compliance with their loan modification agreements and did not provide adverse action notices within thirty days thereafter; (c) whether it is a breach of the contractual duty for Wells Fargo to send notices of default to customers who were in compliance with their final loan modification agreements; (d) the appropriate class-wide equitable relief and the appropriate amount of class-wide statutory damages.

30. The claims of plaintiffs are typical of the claims of all members of the Class. Fed.R.Civ.P. 23(a)(3).

31. Plaintiffs will fairly and adequately represent the Class. Plaintiffs are members of the Class. Plaintiffs are willing and able to serve as representatives of the Class and have no knowledge of any possible divergent interests between themselves and any member of the Class. Plaintiffs have retained competent counsel experienced in class actions and complex litigation to provide representation on behalf of themselves and the Class. Fed.R.Civ.P. 23(a)(4).

32. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant. Fed.R.Civ.P. 23(b)(1)(A).

33. The prosecution of separate actions would also create a substantial risk of adjudications with respect to individual members of the Class, which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. Fed.R.Civ.P. 23(b)(1)(B).

34. Wells Fargo has both acted and refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

35. Questions of law and fact common to members of the Class predominate over any questions affecting individual members. The determinative facts, laws and legal principles apply universally to plaintiffs and the members of the Class. Fed.R.Civ.P. 23(b)(3).

36. Plaintiffs and the members of the Class all have valid claims against defendant. Each element of each claim is susceptible of common proof.

37. A class action provides a fair and efficient method for the adjudication of this controversy for the following reasons:

(a) The common questions of law and fact predominate over any questions affecting only individual Class members; Fed.R.Civ.P. 23(b)(3).

(b) The Class members are so numerous that joinder is impracticable. However, the Class is not so numerous as to create manageability problems. There are no legal or factual issues which would create manageability problems. Fed.R.Civ.P. 23(b)(3)(D).

(c) Prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications against defendant.

(d) Adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of any interest of other members not parties to such adjudication, or substantially impair their ability to protect their interests.

38. The claims of the individual Class members are small in relation to the expenses of litigation, making a class action the only procedure by which Class members can, as a practical matter, redress their grievances. If individual Class members sought relief individually, legal fees would dwarf recoveries for every Class member. However, the total amount of the claims of individual Class members is large enough to justify the expense and effort in maintaining a class action.

**COUNT ONE -- EQUAL CREDIT OPPORTUNITY ACT**

39. Plaintiffs reallege and incorporate paragraphs one through thirty-eight as though fully set forth herein.

40. Federal law contains safeguards that are supposed to prevent what happened to the Schlegels from occurring. One safeguard is the notice of adverse action requirement of the Equal Credit Opportunity Act.

41. Originally enacted in 1974 to prohibit discrimination in credit transactions, the Equal Credit Opportunity Act, 15 U.S.C. § 1691, was amended in 1976 to require creditors to furnish written notice of the specific reasons for adverse action taken against an applicant for credit.

42. The ECOA defines "adverse action," stating:

For purposes of this subsection, the term "adverse action" means a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested. Such term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is

delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit.

15 U.S.C. § 1691(d)(6). Regulations implementing the ECOA are contained in 12 C.F.R. 202. 12 C.F.R. 202.2(c)(1)(ii) defines "adverse action" as including "(ii) A termination of an account or an unfavorable change in the terms of an account."

43. Notice of the adverse action must be provided within 30 days of the adverse action. The ECOA provides:

. . . .

(d) Reason for adverse action; procedure applicable; "adverse action" defined.

(1) Within thirty days (or such longer reasonable time as specified in regulations of the Board for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application.

15 U.S.C. § 1691(d)

The regulations implementing the ECOA provide at 12 C.F.R. 202.9(a) "A creditor shall notify an applicant of action taken within:

(iii) 30 days after taking adverse action on an existing account."

44. 15 U.S.C. § 1691(d) provides:

(2) Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor. A creditor satisfies this obligation by--

(A) providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; or

(B) giving written notification of adverse action which discloses (i) the applicant's right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification, and (ii) the identity of the person or office from which such statement may be obtained. Such statement may be given orally if the written notification advises the applicant of his right to have the statement of reasons confirmed in writing on written request.

(3) A statement of reasons meets the requirements of this section only if it contains the specific reasons for the adverse action taken.

15 U.S.C. § 1691(d)(3) provides that "A statement of reasons meets the requirements of this section only if it contains the specific reasons for the adverse action taken."

45. The ECOA expressly authorizes private law suits to enforce the statutory requirements. The statute provides: "Any creditor who fails to comply with any requirement imposed under this title shall be liable to the aggrieved applicant for any actual damages sustained by such applicant acting either in an individual capacity or as a member of a class." 15 U.S.C. § 1691e(a). "Any creditor . . . who fails to comply with any requirement imposed under this title shall be liable to the aggrieved applicant for punitive damages in an amount not greater than $10,000, in addition to any actual damages provided in subsection (a), except that in the case of a class action the total recovery under this subsection shall not exceed the lesser of $500,000 or 1 percent of the net worth of the creditor. In determining the amount of such damages in any action, the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional." 15 U.S.C. § 1691e(b). "Upon application by an aggrieved applicant, the appropriate United States district court . . . may grant such equitable and declaratory relief as is necessary to enforce the requirements imposed under this title." 15 U.S.C. § 1691e(c). "In the case of any successful action under subsection (a), (b), or (c), the costs of the action, together with a reasonable attorney's fee as determined by the court, shall be added to any award of damages awarded by the court under such subsection." 15 U.S.C. § 1691e(d).

46. Wells Fargo violated plaintiffs' rights under the ECOA. The Schlegels were applicants for credit within the meaning of the ECOA. Wells Fargo's decision to revoke or abrogate their loan modification agreement, as evidenced by the letter of November 7, 2010, attached hereto as Exhibit B, and the letter of November 14, 2010, attached hereto as Exhibit C, even though the Schlegels were in compliance with their approved final loan modification agreement, evidence that Wells Fargo took adverse action on the New Mortgage within the meaning of the ECOA. Wells Fargo had a duty to send

the Schlegels a written adverse action notice within thirty days of its adverse action; Wells Fargo did not do so.

47. Wells Fargo violated plaintiffs' rights under the Equal Credit Opportunity Act, and the rights of members of the proposed Class, by taking adverse action -- through the revocation or abrogation of a loan modification agreement -- and not sending adverse action notices in the form and within the time limits prescribed by the ECOA.

**COUNT TWO -- BREACH OF CONTRACT**

**INJUNCTION AND DECLARATORY JUDGMENT**

48. Plaintiffs reallege and incorporate the above paragraphs one through thirty eight as though fully set forth herein.

49. The terms of the New Mortgage that plaintiffs have with Wells Fargo are set forth in Exhibit A. The other members of the Class also have similar final loan modification agreements with Wells Fargo that are contracts binding Wells Fargo.

50. Plaintiffs and other members of the Class have complied with their loan modification agreements with Wells Fargo. The agreements remain in effect. Nevertheless, Wells Fargo sent notices to plaintiffs and other members of the class stating the borrowers were in default and were obliged to pay Wells Fargo extra money to avoid acceleration of the loan and foreclosure on the mortgage. Wells Fargo thereby violated its contract terms and the inherent duty of good faith and fair dealing.

51. A dispute has arisen between the parties as to whether the final loan modification agreements preclude Wells Fargo from declaring a default, accelerating the loan or foreclosing on the mortgage of borrowers who are in compliance with their loan modification agreements. Plaintiffs and the Class contend that Wells Fargo does not have the right to abrogate the agreements, declare a default, accelerate the loans, send notices of default or foreclose on the mortgages so long as the borrowers make the required payments under the approved final loan modification agreement and otherwise comply therewith.

52. Without a declaration of the rights of the parties, Wells Fargo will take actions inconsistent with the loan modification agreements. Among other things, without a declaration, there is a

real and concrete danger that Wells Fargo will attempt to foreclose on mortgages covered by the loan modification agreements.

53. If Wells Fargo forecloses on mortgages protected by loan modification agreements, plaintiffs and other members of the Class will suffer irreparable injuries.

54. Unless enjoined to honor the loan modification agreements that it has with plaintiffs and the Class, Wells Fargo will continue to send notices of default and take other actions inconsistent with its obligations under the loan modification agreements.

**COUNT THREE -- UNFAIR AND DECEPTIVE TRADE PRACTICE INJUNCTION**

55. Plaintiffs reallege and incorporate the above paragraphs one through thirty eight as though fully set forth herein.

56. Wells Fargo engaged in an unfair and deceptive trade practice, violative of New Mexico law (N.M.S.A. § 57-12-2), when it agreed to modify the Schlegels' loan and then told them they were in default, even though the Schlegels were complying with the terms of the loan modification agreement. Furthermore, it would be an unfair and deceptive trade practice, as well as an unconscionable trade practice, for Wells Fargo to accelerate the Schlegels' loan or foreclose on their mortgage while they are in compliance with the loan modification agreement.

57. Under New Mexico law: "A person likely to be damaged by an unfair or deceptive trade practice or by an unconscionable trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable." N.M.S.A. § 57-12-10 A. Similar laws in other states protect the Class.

58. Absent judicial intervention, plaintiffs are likely to be damaged by Wells Fargo's unfair and deceptive practices. Those potential damages range from emotional distress to loss of their home. Given the balance of equities and the danger of irreparable harm, Wells Fargo should be enjoined from dishonoring the loan modification agreement it entered into with plaintiffs.

///

///

///

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs demand judgment including:

1. An order that this action may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and appointing plaintiffs as class representatives, and appointing the undersigned as class counsel;

2. An order requiring Wells Fargo to provide plaintiffs and all members of the Class with a written statement of reasons as to why Wells Fargo decided to revoke or abrogate their final loan modification agreements, as a partial remedy for Defendant's violation of the Equal Credit Opportunity Act.

3. An award of $500,000 in statutory punitive damages and all the costs of this suit, including attorney's fees and costs, as a partial remedy for Defendant's violation of the Equal Credit Opportunity Act.

4. A declaration that the loan modification agreements of plaintiffs and other members of the Class are still valid and in effect.

5. An order prohibiting Wells Fargo from abrogating or revoking the loan modification agreements of plaintiffs and other members of the Class as long as the borrower remains in compliance therewith.

6. An order prohibiting Wells Fargo from declaring defaults, accelerating loans or foreclosing on mortgages of plaintiffs and other members of the Class as long as the borrower remains in compliance with the loan modification agreement.

7. Such other and further relief as this Court may deem proper.

Respectfully submitted,

By: ______________________
Attorneys for plaintiffs
S. CHANDLER VISHER
DAN HARRIS

Exhibit A to Complaint

WELLS FARGO HOME MORTGAGE

June 29, 2010

JOHN J SCHLEGEL
6525 JAEGER PLACE
LAS CRUCES NM 88012

NAME: JOHN J SCHLEGEL
CASE: 1011014
WFHM: 708 0211429808

This letter will confirm our formal approval of a loan modification of your mortgage loan. To facilitate this transaction, it was mutually agreed that a payment of $0.00 would be required, which will be applied toward the accrued delinquency.

Please sign the enclosed loan modification agreement and return it, along with the payment due as reflected in the terms of this letter. If a Truth in Lending Statement is enclosed with your loan modification agreement, please sign and return all items and payment as disclosure of your interest rate being raised through this loan modification.

The terms of your modification/restructure are outlined below:

| | |
|---|---|
| 1. Due date of first payment: | 08/01/2010 |
| 2. New principal and interest payment amount: | $795.58 |
| 3. Required escrow payment based on previous analysis: | $256.99 |
| 4. Estimated new payment: | $1,052.57 |
| 5. Modified maturity date: | 07/01/2050 |
| 6. Interest rate: | 5.250% |

All late charges, NSF fees, and other fees are the responsibility of the borrower.

*(Step rate changes, if applicable, will be reflected in the terms of the loan modification agreement.)

This proposal is valid for fifteen (15) days from the date of this letter. Therefore, it is imperative the loan modification agreement(s) be executed and returned in the enclosed, self-addressed, prepaid, express mail envelope. Please note, although approved, the normal servicing process will continue uninterrupted, unless advised otherwise. If you are currently protected under a bankruptcy, this approval is contingent upon your continuing to keep your post-petition mortgage payments current, as well as consent to an order lifting the automatic stay or the voluntary dismissal of your case.

11-13-10 12:06 PM Past due amount Not Cor Loan mod Waiting on Settlement or Court Credited Processor — Loan modifier — Christof Wells Fargo exec Dept — Bankruptcy Loss mitigation

Fed Bankruptcy Court —

Contact Pacific time 5AM – 8AM Call Back on Monday

3476 STATEVIEW BLVD., FORT MILL, SC 29715
PHONE: 803/578/8613 • FAX: 866-359-7363

Please note that the final paragraph of the loan modification agreement entitled "CORRECTION AGREEMENT" gives us permission to correct any typographical errors in the loan modification. You do not have to agree to this portion of the contract in order to enter into the loan modification. However, if you do, please initial where indicated. Please note that the Correction Agreement does not permit us to change any material terms such as an interest rate, modification balance, or monthly payment amount.

If we can be of further assistance, please call us at (800) 274-7025, Monday through Friday, 8 AM to 8 PM, Eastern Time.

Sincerely,

Wells Fargo Home Mortgage

Wells Fargo Home Mortgage is required by the Fair Debt Collections Practices Act to inform you that if your loan is currently delinquent or in default, as your loan servicer, we will be attempting to collect a debt and any information obtained will be used for that purpose. However, if you have received a discharge, and the loan was not reaffirmed in the bankruptcy case, Wells Fargo Home Mortgage will only exercise its rights against the property and is not attempting any act to collect the discharge debt from you personally.

With respect to those loans located in the State of California, the state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.



Wells Fargo Home Mortgage
P.O. Box 9039
Temecula, Ca 92589-9039

2242312076

Return Address only
Do not send payments to this address

Loss Mitigation
866-805-9616

Automatic Letter

November 7, 2010

44035/708BKRUPT/NM

JOHN J SCHLEGEL
CAROL ROBIN SCHLEGEL
6525 JAEGER PLACE
LAS CRUCES, NM 88012-7950

RE: Wells Fargo Home Mortgage Loan Number 0211429808

Dear Borrower(s):

Our records show that your mortgage is in default. Our records further indicate that you have been discharged from personal liability for this mortgage loan as a result of a Chapter 7 or Chapter 13 bankruptcy proceeding or that Wells Fargo Home Mortgage has obtained an order granting it relief from the automatic bankruptcy stay. However, you should be aware that the Mortgage remains as a valid lien against the property and will be foreclosed if amounts due thereunder are not made. Please be advised that in the event of foreclosure, you would not be personally liable for any part of the debt, but you will lose your interest in and rights to the property.

The past due payments on this loan are to be made by December 7, 2010, or it will become necessary for us to accelerate the Mortgage Note and pursue the remedies against the property as provided for in the Mortgage or Deed of Trust.

The breakdown of the total past due amount on the account as of today's date is as follows:

| | | |
|---|---|---|
| Past Due Payments | $ | $11,256.36 |
| Late Charge Balance | $ | $0.00 |
| Other Fee Balance | $ | $15.00 |
| Unapplied Funds | -$ | $5,217.59 |

Total due to cure the default and bring the loan current as of November 7, 2010 $ $6,053.77

To avoid the possibility of acceleration, you must pay this amount plus any additional monthly payments, late charges and other charges that may be due under applicable law after the date of this notice and on or before December 7, 2010 in CERTIFIED funds, to **Wells Fargo Home Mortgage, 1200 W 7th Street, Suite L2-200, Los Angeles, CA 90017.**

If funds are not received by the above referenced date, we will proceed with acceleration. Once acceleration has occurred, we may take steps to terminate your ownership in the property by a foreclosure proceeding or other action to seize the home or pursue any other remedy permitted under the terms of your Mortgage.

You have the right to reinstate the Mortgage Note and Mortgage or Deed of Trust after acceleration. However, any future efforts or negotiations to reinstate the loan, including any payments of less than the full past due amount shall not constitute a waiver of the right of acceleration by Wells Fargo Home Mortgage unless otherwise agreed to, in writing, by Wells Fargo Home Mortgage. Moreover, any forbearance by Wells Fargo Home Mortgage in exercising any right or remedy against the property shall not be a waiver of or preclude the exercise of any right or remedy it may have against the property. If foreclosure is initiated, you will have the right to bring a court action to refute the existence of a default or offer any other

defense to acceleration you may deem appropriate. You have the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and sale.

We are required by federal law to notify you of the availability of government-approved home ownership counseling agencies designed to help homeowners avoid losing their homes. To obtain a list of approved counseling agencies please call (800) 569-4287. We urge you to give this matter your immediate attention.

If you would like to discuss the present condition of this loan, or if we can be of further assistance, please call us at 1-800-766-0987, Monday through Friday, 8 AM to 8 PM, Central Time or contact us at Wells Fargo Home Mortgage, c/o Written Correspondence, P O Box 10335, Des Moines, Iowa 50306.

Sincerely,

Wells Fargo Home Mortgage
Default Loan Counseling Department

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have received a discharge of this debt in bankruptcy or are currently in a bankruptcy case, this notice is not intended as an attempt to collect a debt and, this company has a security interest in the property and will only exercise its rights as against the property.



Wells Fargo Home Mortgage
P.O. Box 9039
Temecula, Ca 92589-9039

2242598028

Return Address only
Do not send payments to this address

November 14, 2010

37540/708BKRUPT/NM

JOHN J SCHLEGEL
CAROL ROBIN SCHLEGEL
6525 JAEGER PLACE
LAS CRUCES, NM 88012-7950

RE: Wells Fargo Home Mortgage Loan Number 0211429808

Dear Borrower(s):

Our records show that your mortgage is in default. Our records further indicate that you have been discharged from personal liability for this mortgage loan as a result of a Chapter 7 or Chapter 13 bankruptcy proceeding or that Wells Fargo Home Mortgage has obtained an order granting it relief from the automatic bankruptcy stay. However, you should be aware that the Mortgage remains as a valid lien against the property and will be foreclosed if amounts due thereunder are not made. Please be advised that in the event of foreclosure, you would not be personally liable for any part of the debt, but you will lose your interest in and rights to the property.

The past due payments on this loan are to be made by December 14, 2010, or it will become necessary for us to accelerate the Mortgage Note and pursue the remedies against the property as provided for in the Mortgage or Deed of Trust.

The breakdown of the total past due amount on the account as of today's date is as follows:

| | | |
|---|---|---|
| Past Due Payments | $ | $5,630.26 |
| Late Charge Balance | $ | $0.00 |
| Other Fee Balance | $ | $0.00 |
| Unapplied Funds | -$ | $0.00 |
| Total due to cure the default and bring the loan current as of November 14, 2010 | $ | $5,630.26 |

To avoid the possibility of acceleration, you must pay this amount plus any additional monthly payments, late charges and other charges that may be due under applicable law after the date of this notice and on or before December 14, 2010 in CERTIFIED funds, to **Wells Fargo Home Mortgage, 1200 W 7th Street, Suite L2-200, Los Angeles, CA 90017.**

If funds are not received by the above referenced date, we will proceed with acceleration. Once acceleration has occurred, we may take steps to terminate your ownership in the property by a foreclosure proceeding or other action to seize the home or pursue any other remedy permitted under the terms of your Mortgage.

You have the right to reinstate the Mortgage Note and Mortgage or Deed of Trust after acceleration. However, any future efforts or negotiations to reinstate the loan, including any payments of less than the full past due amount shall not constitute a waiver of the right of acceleration by Wells Fargo Home Mortgage unless otherwise agreed to, in writing, by Wells Fargo Home Mortgage. Moreover, any forbearance by Wells Fargo Home Mortgage in exercising any right or remedy against the property shall not be a waiver of or preclude the exercise of any right or remedy it may have against the property. If foreclosure is initiated, you will have the right to bring a court action to refute the existence of a default or offer any other

defense to acceleration you may deem appropriate. You have the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and sale.

We are required by federal law to notify you of the availability of government-approved home ownership counseling agencies designed to help homeowners avoid losing their homes. To obtain a list of approved counseling agencies please call (800) 569-4287. We urge you to give this matter your immediate attention.

If you would like to discuss the present condition of this loan, or if we can be of further assistance, please call us at 1-800-766-0987, Monday through Friday, 8 AM to 8 PM, Central Time or contact us at Wells Fargo Home Mortgage, c/o Written Correspondence, P O Box 10335, Des Moines, Iowa 50306.

Sincerely,

Wells Fargo Home Mortgage
Default Loan Counseling Department

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have received a discharge of this debt in bankruptcy or are currently in a bankruptcy case, this notice is not intended as an attempt to collect a debt and, this company has a security interest in the property and will only exercise its rights as against the property.