IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN AND CAROL SCHLEGEL, et al., | No. C 10-05679 CRB |
| Plaintiffs, | **ORDER GRANTING MOTION TO DISMISS** |
| v. | |
| WELLS FARGO BANK, N.A. | |
| Defendant. | |

Plaintiffs John Schlegel and Carol Robin Schlegel ("Plaintiffs") bring a putative class action suit on behalf of those similarly situated against Defendant Wells Fargo Bank, N.A. ("Defendant") for "ignoring its own loan modification agreements" and "improperly threaten[ing] plaintiffs with foreclosure." Compl. (dkt. 15) ¶ 1. Relief is sought under the Fair Debt Collection Practices Act ("FDCPA") and the Equal Credit Opportunity Act ("ECOA"). For the reasons discussed below, this Court dismisses both claims.

**I.   BACKGROUND**[1]

Plaintiffs own a home in New Mexico. Id. ¶ 6. In January 2009, they secured a loan from NTFN, Inc. for about $158,000, and signed a deed of trust encumbering their home as security for the loan. Id. Due to financial hardship, Plaintiffs filed for Chapter 7 bankruptcy in March 2010. Id. ¶ 7. Later in March 2010, Plaintiffs' loan was reassigned to Defendant,

---

[1] As this matter comes before the Court on a Motion to Dismiss, the facts presented are drawn from the Amended Complaint and judicially noticeable materials, and are presented in the light most favorable to Plaintiffs.

and Defendant within five days sent a loan modification proposal to Plaintiffs. Id. ¶¶ 8-9. At the time of reassignment, Plaintiffs "were delinquent on their loan payments and in default under the loan agreement." Id. ¶ 8.

Correspondence between Plaintiffs and Defendant resulted in a loan modification proposal signed by both parties as of July 7, 2010. Id. ¶¶ 10-13; Ex. A. Despite the loan modification, Plaintiffs received three erroneous notices of default over the course of the next five months. At first Defendant's representatives told Plaintiffs "not to worry," but later Defendant's representatives claimed that no such loan modification agreement existed. Id. ¶¶ 16, 20. Subsequently, Defendant sent a fourth notice of default, this time stating that foreclosure proceedings were being initiated. Id. ¶ 25. Later, Defendant sent a fifth notice through counsel, affirming that actions were being taken to foreclose on the property in the absence of payment. Id. ¶ 27. Defendant rectified its mistake only upon commencement of this suit. Id. ¶ 28.

Defendant's repeated errors allegedly caused Plaintiffs significant mental anguish, exacerbating Mrs. Schlegel's post traumatic stress disorder and leading to a doubling of Mr. Schlegel's daytime anti-anxiety medication. Id. ¶ 29.

Plaintiffs brought suit for violations under (1) the FDCPA, 15.U.S.C. §1692 et seq., id. ¶¶ 38-53, and (2) the ECOA, 15 U.S.C. §1691 et seq., id. ¶¶ 54-74. Defendant Wells Fargo moves to dismiss for failure to state a claim, arguing that (1) Defendant did not attempt to collect a debt and is not a debt collector under the meaning of the FDCPA, Mot. (dkt. 19) at 3-6; and (2) there was no "adverse action" under the ECOA, id. at 6-8.

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6) tests the legal sufficiency of the claims alleged in a complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "Detailed factual allegations" are not required, but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct.

1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949-50. In determining facial plausibility, whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

"Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." Schneider v. California DOC, 151 F.3d 1194, 1196 (9th Cir. 1998).

## III. DISCUSSION

### A. The Fair Debt Collection Practices Act

Congress intended the FDCPA to "eliminate abusive debt collection practices by debt collectors . . . and to promote consistent state action to protect consumers against debt collection abuses." Landayan v. Washington Mut. Bank, No. C-09-00916 RMW, 2009 WL 3047238, at *2 (N.D. Cal. Sept. 18, 2009) (citing 15 U.S.C. § 1692). The FDCPA prohibits debt collectors from resorting to "false, deceptive, or misleading representation or means" in connection with the collection of any debt. 15 U.S.C. § 1692(e)(10).

To plead entitlement to relief under the FDCPA, Plaintiffs here must allege facts that (1) Defendant was collecting debt as a debt collector, and (2) its debt collection actions were violative of a federal statute. See Jerman v. Carlisle et al, 130 S.Ct. 1605, 1606 (2010) (citing 15 U.S.C. 1692 et seq.). The Court does not reach the second issue of whether Defendant's actions would otherwise merit relief, because Defendant does not fall within the definition of a debt collector. There are two reasons for this. First and primarily, Defendant falls within the FDCPA's definition of a creditor. Second, as alleged by Plaintiffs, the parties executed a loan modification, and so Defendant's actions are more akin to debt servicing than debt collecting, as envisioned by the Act.

3

### 1. Defendant is a creditor, not a debt collector, under the Act

Defendant is not a debt collector under the FDCPA, but a creditor. This distinction is important because the FDCPA applies to debt collectors, but not to creditors. Mansour v. Cal-Western Reconveyance Corp., 618 F. Supp. 2d 1178, 1182 (D. Ariz. 2009). Under the FDCPA, the status of debt collector or creditor is mutually exclusive. Schlosser v. Fairbanks Capital Corp., 323 F.3d 534, 536 (7th Cir. 2003).

Within the meaning of the FDCPA, a "debt collector" is "[1] any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or [2] who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Excluded from the definition of debt collector is "any person collecting or attempting to collect any debt owed or asserted to be owed or due another to the extent such activity...(iii) concerns a debt which was not in default at the time it was obtained." See 15 U.S.C. § 1692a(6)(F). Also, under the FDCPA, a creditor is "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4). Accordingly, collecting debt <u>not</u> for another, whether or not the debt is assigned in default, makes one a creditor. This is in keeping with the legislative history of the FDCPA, which highlights Congress's intent to police the coercive, unrestrained activities of third party debt collectors as distinct from debt servicers. See McKinney v. Cadleway, 548 F.3d 496, 501 (7th Cir. 2008).

Here, Plaintiffs allege that Defendant was assigned a debt that was at the time "in default under the loan agreement." Compl. ¶ 8. Assessing whether Defendant is a debt collector under the FDCPA thus turns on whether Defendant "regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." See 15 U.S.C. §

4

1    1692a(6).² Plaintiffs plead that Defendant is a debt collector under the meaning of the

2    FDCPA because the Act's definition of a creditor "does not include any person to the extent

3    that he receives an assignment or transfer of debt in default." Compl. ¶ 40.  But Plaintiffs

4    truncate the Act.  That sentence ends with: ". . . solely for the purpose of facilitating

5    collection of such debt for another." See 15 U.S.C. § 1692a(4).  Again, under the FDCPA, if

6    someone receives an assignment of debt in default but does not do so "solely for the purpose

7    of facilitating collection of such debt for another," he may still be a creditor.

8         That was the holding of the court in Hulse v. Ocwen Fed. Bank, 195 F. Supp. 2d 1188,

9    1203 (D. Or. 2002), which held that an assignment of debt in default did not in and of itself

10   make the assignee a debt collector.  Instead, Hulse held that for an assignee of a defaulted

11   debt to be a debt collector, there must be some showing that the debt was received for the

12   purpose of facilitating its collection for another.  Id.  Plaintiffs do not allege here that

13   Defendant received the debt for the purpose of collecting for another.  Accordingly, this

14   Court finds that under the plain meaning of the FDCPA, Defendant is not a debt collector,

15   but a creditor.

16        **2. Defendant's actions are more like debt servicing than debt collection**

17        At the motion hearing, Plaintiffs' counsel asked the Court to write the "for another"

18   language out of the FDCPA, asserting that other courts and, in particular, the Seventh Circuit

19   have done just that.  This Court declines to do so in light of the plain meaning of the Act and

20   the general language and design of the Act as a whole.  See Fox v. Citicorp Credit Servcs.,

21   Inc., 15 F.3d 1507, 1512 (9th Cir. 1994).  The definition of "debt collector" and the "creditor"

22   exception both include the phrase "for another."  See 15 U.S.C. §§ 1692a(4), 1692a(6).

23   Moreover, the legislative history also emphasizes that "[t]he term 'debt collector' is defined to

24   include 'all third parties' who regularly collect consumer debts for others . . . ." S. Rep. 95-

25   382, at 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1697, 1701 (emphasis added).

26

27

28       ² Plaintiffs do not allege that Defendant's principal purpose is the collection of debts, so the Court focuses instead on the second prong of the Act's definition of debt collector.

5

1    Plaintiffs do not rely on any relevant Ninth Circuit jurisprudence to support their
2 position that the Court should write out "for another." Plaintiffs cite <u>Moen v. Merrick Bank</u>
3 <u>Corp.</u>, No. C-07-0574 MMC, 2007 WL 1381411, at *1 (N.D. Cal. May 07, 2007), which
4 Plaintiffs characterize as holding that the "FDCPA 'treats assignees as debt collectors if the
5 debt sought to be collected was in default when acquired by the assignee," <u>see</u> Opp'n (dkt. 24)
6 at 5-6. However, in <u>Moen</u> the court repeated the <u>Schlosser</u> characterization without
7 addressing the issue of whether the debt being collected was "for another," because the parties
8 there failed to demonstrate whether the debt in question was in default at the time of its
9 assignment. <u>Id.</u> Similarly, <u>De Dios v. International Realty & Investments</u>, ---F.3d----, 2011
10 WL 1346956, at *1, a case Plaintiff submitted to the Court following the motion hearing,
11 stands for the proposition that an entity is not a debt collector when it was assigned a debt that
12 was not in default. But just because the statutory definition of debt collector excludes those
13 who collect debts for another if such debts were not assigned in default, this does not mean
14 that an entity collecting debts assigned in default is a debt collector. The operative language
15 missing from Plaintiffs' interpretation is "for another."

16    In each of the other cases Plaintiffs cite in support of their position that the Court
17 should write out "for another," all outside of this Circuit, the courts focus on the status of the
18 debt at the time of assignment because the activity in question was unequivocally debt
19 collection, and to rule otherwise would allow an end-run around the Act. <u>See, e.g.</u>, <u>Ruth v.</u>
20 <u>Triumph Partnerships</u>, 577 F.3d 790, 793 (7th Cir. 2009) (where "company that purchases
21 defaulted debts and attempts to recover them" and separate debt collection agency used were
22 subsidiaries of same parent company); <u>McKinney</u>, 548 F.3d at 498-502 (where a party that
23 was assigned a debt in default reassigned that interest to defendant, and defendant sent almost
24 3,500 collection letters, identical to the one sent to plaintiff, within an eighteen month period);
25 <u>Federal Trade Commission v. Check Investors, Inc.</u>, 502 F.3d 159, 162 (3rd Cir. 2007) (where
26 defendant purchased dishonored checks with face value exceeding $300 million and attempted
27 to collect); <u>Schlosser v. Fairbanks Capital Corp.</u>, 323 F.3d 534, 535 (7th Cir. 2003) (where
28 defendant immediately sent notice of default demanding full payment of balance upon

6

1 acquisition of debt in default).  In each of these cases, an artificial distinction between
2 "creditor" and "debt collector" as a result of the "for another" language would unfairly allow
3 a debt collector to masquerade as a creditor.  See also Ballard v. Equifax Check Srvcs., 27 F.
4 Supp. 2d 1201, 1205 (E.D. Cal. 1998) (where a check authorization business purchased
5 dishonored checks it had authorized and then began collection efforts, the court reasoned that
6 the defendant could not "escape the spirit of the FDCPA merely by the technicality of
7 purchasing the debt on default so that title technically rests in itself").

8     Here there is no end-run around the Act.  Even though Plaintiffs' debt was assigned in
9 default, Defendant offered Plaintiffs a loan modification, making its activity more debt
10 servicing than debt collection.  Holding that the FDCPA does not apply here accords with the
11 Act's legislative history, which notes that it does not implicate the actions of creditors "who
12 generally are restrained by the desire to protect their good will when collecting past due
13 amounts."  S. Rep, 95-382, at 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696; see also
14 Ruth, 577 F.3d at 797 (emphasizing that the purpose of the FDCPA is to protect against the
15 myopic activity of a collector of debts who has no long-term client relationship interest in
16 mind).  The Act is aimed at debt collectors who might have "no future contact with the
17 consumer and often are unconcerned with the consumer's opinion of them."  Schlosser, 323
18 F.3d at 536.  Where there is an ongoing relationship, creditors arguably have an incentive to
19 treat debtors with "honesty and respect."  Id.  Here there is an ongoing relationship, as
20 evidenced by the duly executed loan modification agreement.  Accordingly, the Court
21 declines to write "for another" out of the Act.  Because Plaintiffs do not allege that Defendant
22 acquired their defaulted debt "solely for the purpose of facilitating the collection of debt for
23 another," Plaintiffs fail to plead that Defendant is a debt collector.

24     **B.  The Equal Credit Opportunity Act**

25     Under the ECOA, "adverse action" means "a denial or revocation of credit, a change
26 in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the
27 amount or on substantially the terms requested.  Such term does not include a refusal to
28 extend additional credit under an existing credit arrangement where the applicant is

delinquent or otherwise in default." 15 U.S.C. § 1691(d)(6).  When taking an adverse action, a creditor is obligated to provide notice to applicants, detailing specific reasons underlying the adverse action.  15 U.S.C § 1691(d)(2).  This requirement serves a dual purpose: (1) to prevent discriminatory practices by requiring a clear explanation of the action taken, and (2) to provide rejected applicants with educational material relating to their credit status.  Reply at 9 (citing S. Rep. 94-589 (1976), as reprinted in 1976 U.S.C.C.A.N. 403, 406).

### 1. No notice required under the ECOA

Plaintiffs allege that Defendant's actions amount to adverse actions under the ECOA, which triggers liability for any creditor failing to notify a credit applicant of the specific reasons giving rise to an adverse action.  Compl. ¶¶ 63-73.  But Plaintiffs' claim fails under the ECOA because (a) Defendant's actions do not constitute adverse actions as pleaded, and (b) if the actions were adverse actions in that they worked as a denial of the agreed-upon loan modification, the actions would then be exempt from notice because they would relate to the underlying debt in default.

#### a. No "adverse action"

Plaintiffs assert that Defendant is a creditor, and they are applicants for credit, within the meaning of the ECOA.  Compl. ¶ 61.  The loan modification is thus an application for "extension, renewal or continuation of credit; i.e. the right to defer payment of debt."  Compl. ¶ 61; see also Regulation B, 12 C.F.R. § 202.1(3)(j) ("Credit means the right granted by a creditor to an applicant to defer payment of a debt, incur debt and defer its payment, or purchase property or services and defer payment therefor.").  Plaintiffs assert that Defendant had ample opportunity to investigate and rectify their mistaken notices of default, but instead "persisted in proceeding down the path of default, acceleration and foreclosure."  Id. ¶ 62. Plaintiffs argue that Defendant's actions constitute adverse actions under the ECOA and lack the specific notice required under the statute.  Id. ¶¶ 62-73.  Plaintiffs allege that the following constitute adverse actions under the ECOA: (1) Defendant's assertion that Plaintiffs were in default when they were not, leading to acceleration; (2) Defendant's failure to capitalize Plaintiffs' delinquent payments during the period from July through November

8

2010; (3) Defendant's failure to credit Plaintiffs' payments against principal and interest owed during the period from July through November 2010; and (4) the various demand letters issued by Defendant, coupled with actions taken by Defendant's foreclosure counsel. Id. ¶¶ 62-72.

However, Plaintiffs cite no case law supporting their contention that ministerial error constitutes "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." See 15 U.S.C. § 1691(d)(6). All that they allege is that Defendant committed a series of mistakes, that it failed to properly investigate and rectify these mistakes in a timely fashion, and that it has made similar mistakes in the past, with respect to other borrowers. See, e.g., Compl. ¶¶ 32-37.

But Defendant responds, persuasively, that there was no adverse action, i.e., the right to delay the repayment of Plaintiffs' debt had been granted, and the erroneous notices were not, in fact, changes to the already agreed-upon credit terms. See Reply at 8. Indeed, Plaintiffs proffer no facts suggesting that the loan modification was revoked or otherwise modified. An ECOA notice might be required if, although the loan had been in default, the subsequent loan modification cured default, and Defendant's actions worked a denial of credit. See 15 U.S.C. § 1691(d)(6). But even according to Plaintiffs' allegations, Defendant did not alter the terms of the loan modification agreement. Barring such a change, no notice of an adverse action is required under the Act.[3]

### b. Notice not required where debt is in default

Even if, as Plaintiffs' counsel suggested at the motion hearing, the Court were to construe the loan modification agreement as ineffective during the period in which Defendant sent the faulty notices of default, Plaintiffs would still fail to state a claim under the ECOA. In such circumstances, Plaintiffs remained in default of their original obligation and thus were not entitled to an adverse action notice under the ECOA. See 12 C.F.R. §

---

[3] As Defendant's counsel commented at the motion hearing, requiring notice of adverse actions for each erroneous communication with a creditor would be untenable. This could not have been the purpose of the Act.

9

202.2(c)(2)(ii) (adverse action does not include "[a]ny action or forbearance relating to an account taken in connection with inactivity, default, or delinquency as to that account); <u>see also</u> FRB Advisory Letter CA 09-13 (creditor not required to provide adverse action notice "to a borrower whose account is currently delinquent or in default").

Accordingly, whether or not the loan modification agreement was operative, Plaintiffs' ECOA claim fails.

**IV.  CONCLUSION**

For the foregoing reasons, Plaintiffs fail to state claims under the FDCPA and the ECOA. The case is therefore dismissed with prejudice.

**IT IS SO ORDERED.**



Dated: July 5, 2011

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE

G:\CRBALL\2010\5679\order re MTD.wpd          10